UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| DANNY F. WIREMAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:15-CV-008 JD |
| | ) |
| WHITE COUNTY SHERIFF'S DEPARTMENT, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Danny Wireman was detained in the White County jail for about three days. During that time, he did not receive pain medication, even though he had been taking OxyContin for multiple years to treat his back pain. He alleges that this lapse in pain medication caused him to endure unnecessary pain during his detention, and that his withdrawal from pain medication caused him to suffer a lasting injury shortly after his release. He thus filed this action asserting a variety of claims under federal and state law. He named as defendants the county's sheriff's department, two of its employees, the company contracted by the county to provide medical services at the jail, and the doctor responsible for those services. His wife also asserts a loss of consortium claim under state law. All of the defendants have now moved for summary judgment. For the following reasons, the Court grants the motions as to the federal claims, and relinquishes supplemental jurisdiction over the state claims.

## I. FACTUAL BACKGROUND

On November 13, 2013, plaintiff Danny Wireman was transferred to the White County jail from the Porter County jail, where he had spent the previous 31 days. Upon his arrival, he was interviewed by a jail officer, who completed an intake report. That report guides the officer

through a series of questions relative to the inmate's health. Mr. Wireman told the officer each of the medications he was on, which included OxyContin for back pain, Metformin for his diabetes, and other medications. The officer (who is not a party to this case) did not record those medications in the intake report, though, as she was supposed to. Instead, the report states that Mr. Wireman was diabetic and that he had "back problems" with a "stiumlat[o]r going up through [his] back." [DE 63-4]. The report also noted that Mr. Wireman had fainted about three weeks ago, and that he had recently seen a doctor for back pain.

During the intake, Mr. Wireman asked if he could have his family bring his medications to the jail, but the officer told him that the jail did not accept outside medications. Mr. Wireman's son came to the jail later that day to drop off his medications, but was likewise told that they did not accept outside medicine. Mr. Wireman's wife was given similar information by phone. However, this information was contrary to the jail's official policy. Pursuant to the jail's policy, inmates are allowed to bring medication with them or have family members bring it to the jail. At that point, jail staff would log and take custody of the medication. The doctor would then be called to approve the medication, which would then be administered to the inmate by a jail officer or by the nurse.

To provide medical care to inmates in its jail, the White County Sheriff's Department contracted with Correct Care Solutions. Pursuant to the contract, Correct Care would provide a nurse at the jail on a daily basis, and would also provide a doctor to act as the medical director. At the time Mr. Wireman was at the jail, Dr. Michael Silbert held that position. He would be present at the jail one day a week, and was available by phone around the clock, seven days a week. All medical decisions at the jail were the responsibility of Dr. Silbert or the nurse, and jail officers were trained to contact the medical personnel regarding any medical issues. Any

medication would have to be prescribed or approved by Dr. Silbert before being administered to the inmates.

After his intake at the White County jail on Wednesday, November 13, Mr. Wireman was admitted into the jail. That morning, he had received his medication from the Porter County jail prior to his transfer. That included a pain medication that had been substituted for his normal prescription of OxyContin. The next morning, though, when he went to receive his medication at the White County jail, Mr. Wireman was told that no medication had been left for him. Later that afternoon, Mr. Wireman passed out in his cell. When he woke up, the nurse was assisting him, and she gave him an over-the-counter pill for a bump on his head. Thereafter, Mr. Wireman's blood sugar was regularly checked and he was administered Metformin for his diabetes, in addition to Zoloft. Dr. Silbert would have been the one who prescribed those medications, likely after being called by the nurse, though he has no recollection of being contacted about Mr. Wireman and never saw Mr. Wireman personally.

During his stay at the jail, Mr. Wireman did not receive OxyContin or any other prescription pain medication, though he asked guards on multiple occasions for medications or medical treatment. He testified that he experienced severe pain during this period and got little sleep. Dr. Silbert testified that, had he known that Mr. Wireman was taking OxyContin and was experiencing back pain, he would have prescribed Tylenol with codeine number 3, which he believes is as effective as OxyContin, but is less susceptible to abuse within the jail environment and is less costly. However, he has no recollection of being told that Mr. Wireman was taking or had a need for pain medication, and there is no documentation or testimony from any other witness that he was given that information, either.

Mr. Wireman was released from the White County jail on Saturday, November 16. He took one of his prescribed OxyContin pills shortly after his release, at which point he had been without prescription pain medication for about three days. A day or two after his release, Mr. Wireman began to suffer from an ischemic priapism, which is a prolonged erection where blood is not able to exit the penis. When he arrived at a doctor's appointment that Tuesday, Mr. Wireman was sent directly to the emergency room, where he had to undergo a procedure to relieve the condition, and he later had to undergo a procedure to implant a prosthesis to treat the lasting effects of that condition. Mr. Wireman alleges that this condition resulted from his withdrawal from pain medication during his detention at the White County jail.

## II. STANDARD OF REVIEW

Summary judgment is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

## III. DISCUSSION

Mr. Wireman argues in this action that the defendants wrongfully deprived him of pain medication during his detention, causing unnecessary pain over that time, and causing a lasting injury as a result of his withdrawal from the medication. He asserts federal claims against each of the defendants, and he and his wife assert a variety of claims under state law. The Court first considers the claims under federal law, and then turns to the claims under state law.

**A.     Federal Claims**

Mr. Wireman[1] asserts federal claims against each of the defendants under § 1983, which creates a cause of action against any person who, while acting under color of law, violates an individual's constitutional rights. 42 U.S.C. § 1983. Mr. Wireman alleges that by failing to provide him with pain medication during his detention, the defendants were deliberately indifferent to his serious medical needs. As a pretrial detainee, the source of Mr. Wireman's constitutional right against such treatment is the Fourteenth Amendment. In this context, however, courts apply the same standard for deliberate indifference as would apply under the Eighth Amendment (which proscribes cruel and unusual punishment following a conviction). *Rosario v. Brawn*, 670 F.3d 816, 820–21 (7th Cir. 2012).

To prevail on a claim for deliberate indifference, a plaintiff must first show that he "suffered from an objectively serious medical condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Second, a plaintiff must show that the "defendant was deliberately indifferent to that condition." *Id.* "To determine if a prison official acted with deliberate indifference," courts "look into his or her subjective state of mind." *Id.* This element has two components: "The official [1] must have subjective knowledge of the risk to the inmate's health

---

[1] In response to the motions for summary judgment, the plaintiffs clarified that Ms. Wireman is not a plaintiff as to the federal claims.

5

and [2] must disregard that risk." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010). Thus, "[o]fficials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety." *Petties*, 836 F.3d at 728.

The parties do not dispute for these purposes that Mr. Wireman's back condition constituted an objectively serious medical condition. However, the defendants each argue that there is insufficient evidence to show that they acted with deliberate indifference and that they can be held liable for any violations. Two groups of defendants filed separate motions for summary judgment, and the Court evaluates them separately.

### 1. Sheriff Defendants

Mr. Wireman asserts a § 1983 claim against White County Sheriff Patrick Shafer and Jail Commander Ryan Hurd, each in both their individual and official capacities, and the White County Sheriff's Department.[2] Shafer and Hurd first argue that they cannot be held liable in their individual capacities because § 1983 requires personal responsibility for a violation in order to hold a defendant liable, and they had no involvement in the incidents in question and never interacted with Mr. Wireman. *Minix v. Canarecci*, 597 F.3d 924, 833–34 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation." (internal quotation omitted)). In response, Mr. Wireman concedes that these defendants cannot be held liable in their individual capacities,[3] so the Court grants summary judgment as to the § 1983 claims against these defendants in their individual capacities.

---

[2] The defendants argue that the proper name for this defendant is the "Office of the Sheriff of White County," but they do not deny that that entity has been made a defendant to this action—to the contrary, as noted below, they argue that the plaintiffs have sued the same defendant three times over. [DE 61 p. 8–9]. For ease of reference, the Court refers to this entity as the Sheriff's Department.

[3] After conceding that these defendants cannot be held liable in their individual capacities, and that only the official-capacity claims should remain, Mr. Wireman argues that these defendants

6

That leaves the two individuals in their official capacities and the Sheriff's Department. However, "a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 n.2 (1997) (internal quotations and alterations omitted); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Thus, by suing two Sheriff's Department employees in their official capacities as well as the Sheriff's Department itself, Mr. Wireman has effectively sued the same defendant under three different names. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief."). Accordingly, the Court need not distinguish between these three defendants; the question is only whether the Sheriff's Department can be held liable under § 1983 for this alleged violation. *Id.* ("[A] government entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." (internal quotations omitted)); *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) ("The liability of the Sheriff's Department . . . is derivative of [the sheriff's] official-capacity liability, and the official-capacity liability is subject to holding in *Monell* . . . that a 'local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'").

---

are not entitled to qualified immunity. However, claims against individuals in their official capacities are equivalent to claims against the entity that employs them, *McMillian*, 520 U.S. at 785 n.2, and qualified immunity is not available as a defense to governmental entities, *Pearson v. Callahan*, 555 U.S. 223, 242–43 (2009), so qualified immunity is irrelevant once the individual-capacity claims are dismissed (as Mr. Wireman agrees they must be).

Because § 1983 requires personal responsibility before imposing liability, a governmental entity cannot be held liable just because its employees committed a constitutional violation. *Monell*, 436 U.S. at 691. "A governmental unit is not liable under § 1983 unless the deprivation of constitutional rights is caused by its own policy or custom." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). A local governmental unit's unconstitutional policy or custom can be shown by: (1) an express policy causing the loss when enforced; (2) a widespread practice constituting a "custom or usage" causing the loss; or (3) a person with final policymaking authority causing the loss. *Id.*; *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016) ("To hold defendants liable under § 1983, [a plaintiff] must demonstrate that the defendants' 'official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind his constitutional injury.'" (quoting *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016))).

Here, Mr. Wireman first alleges that the Sheriff's Department has a policy of refusing narcotic pain medications to inmates. There is no such express policy, though—the Sheriff's Department's official policy is to defer to medical providers as to the appropriate medications—so Mr. Wireman must provide evidence that the Sheriff's Department has a widespread practice that is so entrenched and well-known as to carry the force of policy. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). The Seventh Circuit has acknowledged that there is "no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Thomas*, 604 F.3d at 303 (citing *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988) and *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)). Ultimately, "the plaintiff must demonstrate that there is a policy at issue rather than a random event." *Id.*

As evidence of such a widespread practice, Mr. Wireman identifies three occasions when inmates were denied pain medications: his own detentions in 2011 and in November 2013 (the present case), and his son's detention at some other point. Mr. Wireman's brief contains no citation to the record as to his 2011 detention, though.[4] As to the son's experience, he was detained at the White County jail for less than one day, but claims to have missed several scheduled doses of pain medication during that time. Even assuming, however, that these represent three instances of inmates being denied pain medication, that falls well short of establishing a practice so widespread as to constitute a policy. *Thomas*, 604 F.3d at 303; *Gable*, 296 F.3d at 538 (holding that "three incidents were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware").

Mr. Wireman also argues that the Sheriff's Department has a policy of refusing to allow inmates to bring their own medications to the jail to be administered during their stay, as he, his wife, and his son were each separately told that the jail did not accept outside medications. Again, the department's formal policy is to the contrary, but even if such a policy existed in practice, Mr. Wireman has not shown how it would support a claim for deliberate indifference. There is nothing inherently improper about such a policy; there are surely ways for a jail to provide constitutionally adequate medical care without allowing inmates to supply their own medications. For such a policy to support a claim for deliberate indifference, Mr. Wireman must show that the Sheriff's Department was aware of a risk that the policy would result in inmates not receiving needed medication, and that it failed to take appropriate steps to protect him from a known danger. *Thomas*, 604 F.3d at 303 ("To demonstrate that the County is liable for a harmful

---

[4] In the defendants' reply, they indicate that Mr. Wireman was booked and released on the same day in 2011, which is why he would not have received medication during that stay.

9

custom or practice, the plaintiff must show that County policymakers were deliberately indifferent as to the known or obvious consequences. In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." (internal quotation omitted)); *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 780 (7th Cir. 2014) ("[T]he 'existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent.'" (quoting *Frake v. City of Chi.*, 210 F.3d 779, 782 (7th Cir. 2000))).

Mr. Wireman has not made that showing, as the Sheriff's Department has other procedures in place to ensure that inmates receive appropriate medication. First, the Sheriff's Department contracted with Correct Care to provide medical care at the jail. Correct Care provided a nurse who worked at the jail each weekday, and a doctor who spent one day a week at the jail and who was on call around the clock. Jail officers were trained to call the medical personnel concerning any medical issues, and all medical decisions, including those regarding medications, were made by Correct Care employees. In addition, when inmates arrived at the jail, they would be interviewed by a jail officer, who would complete an intake report. Among other information, the report asks if the inmate is carrying medication or is supposed to be on any medication, and asks a variety of questions about the inmate's health. Once completed, the report would be printed and provided to the nurse. For inmates taking medication, the doctor would be contacted to approve the medication, which would then be administered by the nurse or by jail personnel. The jail had certain common medications in stock, and would obtain other medications as needed from pharmacies to administer to the inmates.

Though the jail's official policy was to permit inmates to bring outside medication, Mr. Wireman has not shown that it relied on inmates doing so to determine whether they were taking

10

medication or to approve its administration, such that a failure to follow that policy in practice would constitute deliberate indifference.[5] Notably, the only instances Mr. Wireman has cited in which an inmate did not receive medication were this case and a previous experience by his son, as just noted. Thus, even assuming the Sheriff's Department had a de facto policy of prohibiting outside medication, Mr. Wireman has not shown that the Sheriff's Department was aware of a risk of serious harm resulting from that policy and acted with deliberate indifference by failing to protect him from that harm. *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 407 (1997) ("[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences."); *Smith v. Sangamon Cty. Sheriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013) (noting that a plaintiff could make this showing "by evidence of a series of bad acts that the policymaking level of government was bound to have noticed"). Therefore, Mr. Wireman cannot show that his failure to receive pain medication during his detention was the product of deliberate indifference on the part of the Sheriff's Department. Summary judgment must accordingly be granted as to his § 1983 claim against the Sheriff's Department.

### 2. Medical Defendants

Mr. Wireman next asserts claims against Correct Care Solutions—the company that White County contracted to provide medical services at the jail—and Dr. Silbert—who was employed by Correct Care to act as the jail's medical director. Mr. Wireman alleges that Dr. Silbert acted with deliberate indifference to his serious medical need by failing to prescribe

---

[5] In fact, Dr. Silbert testified that the purpose of allowing outside medications was to save costs.

OxyContin to treat his pain and prevent withdrawal, and that Correct Care can be held liable for that violation through an alleged policy of substituting OxyContin with other pain medication.

Beginning with the claim against Dr. Silbert, a defendant is deliberately indifferent "only if he '*knows of* and disregards an excessive risk to inmate health or safety.'" *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (emphasis added). Thus, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728. Mr. Wireman's claim against Dr. Silbert fails because he has provided no evidence that Dr. Silbert actually knew of his need for OxyContin, such that he could have acted with deliberate indifference by failing to prescribe it or another pain medication.

Mr. Wireman testified that he told a jail officer during his intake that he was taking OxyContin. However, there is no evidence that that information was ever passed on to Dr. Silbert. Though Dr. Silbert would have been called by the nurse to approve the other medications Mr. Wireman received during his detention, there is no evidence that the nurse also told Dr. Silbert at that time that Mr. Wireman was taking or had a need for pain medication. The jail officer did not record on the intake report that Mr. Wireman was taking pain medication, and Mr. Wireman did not submit any testimony from the officer about what information she gave the nurse. Mr. Wireman has not offered any testimony from the nurse, either, nor has he submitted any documentation showing whether she was aware of Mr. Wireman's pain medication or gave that information to Dr. Silbert. And Dr. Silbert himself has no recollection of Mr. Wireman or any events at issue in this case, and did not personally see Mr. Wireman during his detention. On that record, it would require pure speculation to find that the intake officer told the nurse about the pain medications, that the nurse then told Dr. Silbert, and that the information he was given

12

was sufficient to put him on notice of a substantial risk of harm to Mr. Wireman. Therefore, without evidence that Dr. Silbert knew Mr. Wireman had a need for pain medication, a jury could not find that Dr. Silbert acted with deliberate indifference by failing to prescribe it.

Mr. Wireman also suggests that if Dr. Silbert had seen the intake report, he would have known that Mr. Wireman needed pain medication. Again, however, there is no evidence that he saw that report, as he never saw Mr. Wireman personally and would have approved of any medications over the phone. In addition, the report did not state that Mr. Wireman was taking any pain medication, even though it asked whether the inmate was supposed to be on any prescription medicine. Mr. Wireman relies instead on the statements in the report indicating that he had back problems, had seen a doctor for back pain, and had a stimulator going up through his back. He has not shown that those notations would have required a conclusion that he needed pain medication, though, such that they could support a claim for deliberate indifference. While Dr. Silbert testified that an individual with that condition would "possibly" be taking pain medication, he also testified that nerve stimulators will sometimes give "total relief" so that the individual would not need any pain medication. [DE 63-4 p. 59]. Since the intake report indicated that Mr. Wireman had a stimulator, and did not indicate he was taking pain medications, Mr. Wireman has not shown that a doctor would be deliberately indifferent by not prescribing pain medication if given the information in the report. *Whiting*, 839 F.3d at 662 ("The defendant must know of facts from which he could infer that a substantial risk or serious harm exists, and he must actually draw the inference.").

Mr. Wireman also argues that Dr. Silbert had the responsibility to ensure that the jail employees properly documented all inmates' medications. However, he cites no evidence or authority that Dr. Silbert himself had such a responsibility, nor does he cite evidence that Dr.

13

Silbert was aware that jail employees were not properly documenting inmates' medications. Therefore, Dr. Silbert cannot be held liable on that basis either. *Minix*, 597 F.3d at 833–34 (holding that a jail's medical director could not be held liable where he was unaware that other employees were not performing competently). Accordingly, summary judgment is granted as to Mr. Wireman's § 1983 claim against Dr. Silbert.

Last, Mr. Wireman argues that Correct Care should be liable for failing to provide his pain medication. As a private company that contracted to provide essential government services, Correct Care is subject to the same rules under § 1983 as governmental entities. *Glisson v. Ind. Dept. of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017) (en banc). To hold Correct Care liable under § 1983, Mr. Wireman must therefore show that a policy or custom of Correct Care caused his constitutional injury. *Walker*, 526 F.3d at 977. To make that showing, Mr. Wireman alleges that Correct Care maintained an apparently unwritten policy of automatically substituting OxyContin for Tylenol with codeine number 3. That argument fails for multiple reasons.

First, as even Mr. Wireman acknowledges, that policy was never applied to him—he did not receive any pain medication at all, as Dr. Silbert was unaware that he was taking OxyContin. Thus, this alleged policy never affected Mr. Wireman and could not have been the "moving force" behind any deprivation.[6] *See Thomas*, 604 F.3d at 306 ("In applying the different theories of liability recognized under *Monell*, we have always required plaintiffs to show that their injuries were caused by the policies or practices complained of."). Second, Mr. Wireman has not shown that such a policy exists. The argument section of his brief contains no citation to the

---

[6] He has also failed to show that such a policy would have harmed him had it applied, as he has not shown that the Tylenol would have been an inappropriate treatment for his condition. In fact, he acknowledges that during the 31 days he was detained in Porter County immediately prior to his transfer to White County, he received a substitute pain medication in place of OxyContin, and Dr. Silbert testified that the Tylenol would have been as effective as OxyContin.

record, and thus fails to support this contention. In the brief's statement of facts, the only evidence on this topic is Dr. Silbert's testimony about how he would handle inmates with existing prescriptions for OxyContin. Dr. Silbert testified that for such inmates, he would substitute OxyContin with Tylenol with codeine number 3, as he believes that medication is as effective, less susceptible to abuse in the jail, and less costly. There is no evidence that this judgment was the product of any policy of Correct Care, and Mr. Wireman gives no reason why the judgment of this one doctor could constitute a de facto policy of Correct Care, such that Correct Care could be held liable under § 1983. Accordingly, because Mr. Wireman has failed to establish any basis for attaching liability to Correct Care under § 1983, the Court grants the motion for summary judgment as to that claim.

**B.     State Claims**

The Wiremans also assert a number of claims under state law, including claims for assault, battery, negligent infliction of emotional distress, intentional infliction of emotional distress, and loss of consortium. Those claims arise only under this Court's supplemental jurisdiction. Under § 1367, a district court "may decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Although the decision is discretionary, 'when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)). "The presumption is rebuttable, 'but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law.'" *Id.* (quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)).

Here, all of the federal claims in this action have been dismissed prior to trial, so the presumption is that the Court should relinquish jurisdiction over the state-law claims. The Court finds no reason to rebut that presumption. The resolution of the remaining claims involves disputes over the contours of the state causes of action and the availability of immunity under state law, and the state has an interest in having those matters of state law decided by its own courts. Therefore, the Court relinquishes its supplemental jurisdiction over the claims arising under state law. *Hansen v. Bd. of Tr. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." (internal citations omitted)). Those claims are dismissed without prejudice, and the Wiremans are free to pursue them in state court.[7]

## IV. CONCLUSION

The defendants' motions for summary judgment [DE 51, 56] are GRANTED as to all claims arising under federal law. The Court relinquishes jurisdiction over all claims arising under state law, which are DISMISSED WITHOUT PREJUDICE so that they may be pursued in state court. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: April 25, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[7] The statute of limitations will be tolled for the time these claims were pending in federal court. 28 U.S.C. § 1367(d); *McGill v. Ling*, 801 N.E.2d 678 (Ind. App. 2004).